# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KERIN JOHNSON WILLIAMS**                     **CIVIL ACTION**

**VERSUS**                                     **NO. 13-11**

**MICHAEL J. ASTRUE, COMMISSIONER**            **SECTION "J" (3)**
**SOCIAL SECURITY ADMINISTRATION**

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

## I.      BACKGROUND

Plaintiff filed an application for DIB on December 23, 2010, alleging a disability onset date of September 20, 2009. (Adm. Rec. at 39). Plaintiff alleged disability due to degenerative joint disease, joint replaced in the left shoulder, degeneration in both knees and degeneration of the spine. (*Id.* at 151). Plaintiff, born on April 23, 1965, was 44 years old on the date on which she alleged disability and 46 years old at the time of the final administrative decision. (*Id.* at 134, 153). Plaintiff completed one year of college. (*Id.* at 153). Plaintiff has a past work experience as a home health

aide, file clerk, front desk clerk, customer service representative, office manager and billing clerk. (*Id.* at 50).

Defendant initially denied plaintiff's application on April 19, 2011. (*Id.* at 39, 80). Plaintiff sought an administrative hearing, which defendant held on October 31, 2011. (*Id.* at 56-76). Plaintiff and a vocational expert ("VE"), Mary E. Kelly, testified at the hearing.

On November 18, 2011, the administrative law judge ("ALJ") issued a decision in which she found that plaintiff had not been disabled through the date of the decision. (*Id.* at 39-51). In the decision, the ALJ concluded that plaintiff has the severe impairments of arthropathies, osteoarthritis, depression, hypertension, monocular peripheral vision and obesity. (*Id.* at 41). The ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 42). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except with the need to alternate sitting/standing every hour for several minutes; no climbing ladders, ropes and scaffolds and kneeling; occasional climbing of ramps and stairs, stooping, crouching, crawling; no overhead reaching with the left upper extremity; occasional pushing and pulling with the left upper extremity; with the need to avoid work requiring fine bilateral peripheral vison; with work in an environment free of fast-paced production requirements and with routine work changes. (*Id.* at 46). The ALJ concluded that plaintiff can perform her past relevant work as a billing clerk and customer service representative. (*Id.* at 50). The ALJ thus denied plaintiff DIB. (*Id.* at 51).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled. (*Id.* at 34-35). On September 24, 2012, the Appeals Council denied plaintiff's request. (*Id.* at 6-11).

Plaintiff then timely filed this civil action.

## II.   STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at 135.  Any

of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.  Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.   *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995).   The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step

procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any
> substantial gainful activity by reason of any medically determinable physical or
> mental impairment which can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less than 12 months." To
> determine whether a claimant is disabled, and thus entitled to disability benefits, a
> five-step analysis is employed. First, the claimant must not be presently working at
> any substantial gainful activity. Second, the claimant must have an impairment or
> combination of impairments that are severe. An impairment or combination of
> impairments is "severe" if it "significantly limits [a claimant's] physical or mental
> ability to do basic work activities." Third, the claimant's impairment must meet or
> equal an impairment listed in the appendix to the regulations. Fourth, the impairment
> must prevent the claimant from returning to his past relevant work. Fifth, the
> impairment must prevent the claimant from doing any relevant work, considering the
> claimant's residual functional capacity, age, education and past work experience. At
> steps one through four, the burden of proof rests upon the claimant to show he is
> disabled. If the claimant acquits this responsibility, at step five the burden shifts to
> the Commissioner to show that there is other gainful employment the claimant is
> capable of performing in spite of his existing impairments. If the Commissioner
> meets this burden, the claimant must then prove he in fact cannot perform the
> alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)).  If the ALJ

determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish

that the claimant has a "residual functional capacity," given the claimant's age, education, and past

work experience, to perform other work available in the national economy.  *Leggett v. Chater*, 67

F.3d 558, 564 n.11 (5th Cir. 1995).  Step V also requires the Commissioner to use the medical-

vocational guidelines to make his disability determination.  *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial

are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians;

(3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

**IV.    ISSUE ON APPEAL**

There are two issues on appeal:

(1)    Whether the ALJ erred when she concluded that plaintiff's fibromyalgia is not a medically-determinable impairment.

(2)    Whether substantial evidence supports the ALJ's RFC.

**V.    ANALYSIS**

**1.    Whether the ALJ erred when she concluded that plaintiff's fibromyalgia is not a medically-determinable impairment.**

Plaintiff contends that the ALJ erred when she concluded that her fibromyaligia was not a medically-determinable impairment. Plaintiff argues that "the ALJ's failure to recognize Plaintiff's subjective complaints associated with the condition and accommodate for them in her RFC assessment due to lack of objective evidence is improper." [Doc. #24-1 at p. 6].

It is well-settled law that a claimant's subjective complaints must be corroborated, at least in part, by objective evidence. *See Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1991) (citing 42 U.S.C. § 423(d)(5)(A)). The ALJ acknowledged plaintiff's complaints of fibromyalgia that rendered her exhausted:

> Claimant also has fibromyalgia and is very exhausted from it. She receives injections every three months into both her knees. She has been having injections in the left knee for the past two years and in the right knee since this year.

(Adm. Rec. at 47). The medical record reveals that plaintiff complained of pain in her back, hip, and

knees caused by her fibromyalgia. (*Id.* at 41, 524, 540-41). When evaluating plaintiff's impairments at step two, the ALJ noted that plaintiff's fibromyalgia was not a medically-determinable impairment, (*id.* at 41). This conclusion coincides with the medical assessment by the state agency medical consultant, Doris LeBlanc, M.D, who also did not list fibromyalgia as a medically-determinable impairment. (*Id.* at 86-87). These two findings also coincide with the definition of medically-determinable impairment outlined in Social Security Ruling (SSR) 96-4p, 1996 WL 374187.

Plaintiff's arguments miss the mark. The question before the Court is not whether the ALJ committed reversible error by not finding that plaintiff's fibromyalgia was a severe impairment at step two. The issue is whether the ALJ properly evaluated all of plaintiff's impairments, including those that the ALJ found not severe, in the subsequent steps of the sequential evaluation process. The ALJ's step-two severity analysis does not control the outcome of this case because the ALJ made a step-four disability determination and found that plaintiff can perform her past relevant work. *See Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987). Once an ALJ resolves step two of the sequential evaluation process and then ultimately renders a decision at step four or step five, the severity standard is no longer material. *See Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987) (rejecting as "disingenuous" the claimant's argument that the ALJ applied the improper severity standard because claimant's case was not prematurely denied based on an improper determination of non-severity as ALJ proceeded to steps four and five before finding claimant not disabled). Moreover, the applicable regulations state that labeling an impairment as either severe or non-severe is not material when an ALJ ultimately makes a decision at step four or five because the

combined impact of all of the claimant's impairments – both severe and non-severe – must be considered throughout the disability determination process. *See* 20 C.F.R. § 404.1523. Thus, once an ALJ determines that a claimant has a severe impairment for the purposes of step two, the combined effect of all impairments is considered, regardless of whether they are the result of impairments that are labeled "severe" or "non-severe." *See id.*

In her RFC analysis, the ALJ considered all of plaintiff's impairments, including those that were not severe. (Adm. Rec. at 40). The ALJ further considered all of plaintiff's symptoms and the extent to which they were consistent with the objective medical evidence based on the requirements of 20 C.F.R. § 404.1529. The ALJ also evaluated the intensity, persistence, and limiting effects of all of plaintiff's symptoms to determine the extent to which they limited plaintiff's functioning. (Adm. Rec. at 47). Thus, the ALJ considered plaintiff's fibromyalgia, and any limiting effects, even though she ultimately concluded that it is not a severe impairment. (*Id.*).

As an example, the ALJ noted plaintiff's complaints associated with her fibromyalgia – exhaustion, back pain, hip pain, and knee pain. (*Id.* at 41-42, 47). Then, the ALJ incorporated plaintiff's complaints into her RFC assessment by finding that plaintiff can only perform a restricted range of sedentary work, with the need to alternate sitting and standing, and with restrictions in climbing, kneeling, stooping, crouching, crawling, and overhead reaching, pushing, and pulling. (*Id.* at 46). Thus, the ALJ considered plaintiff's subjective complaints that result from her fibromyalgia, despite not finding the fibromyalgia itself "severe."

Plaintiff further argues that the regulations required the ALJ to re-contact her medical source to verify the name of the physician who wrote the report on her fibromyalgia. The record does not

warrant such action by the ALJ.  State agency medical consultant LeBlanc reviewed the entire

medical record on April 18, 2011.  (*Id.* at 81-93).  LeBlanc's review encompassed the treatment

notes from the Medical Center of LA NO, (*id.* at 82), which included the LSU Clinical Reports.

LeBlanc noted that a consultative examination was required because plaintiff's treating or other

medical sources did not provide the specialized medical evidence needed. (*Id.* at 85). Section

404.1512(e) provides:

> Obtaining a consultative examination. We may ask you to attend one or more
> consultative examinations at our expense. See §§ 404.1517 through 404.1519 for the
> rules governing the consultative examination process. Generally, we will not request
> a consultative examination until we have made every reasonable effort to obtain
> evidence from your own medical sources. However, in some instances, such as when
> a source is known to be unable to provide certain tests or procedures or is known to
> be nonproductive or uncooperative, we may order a consultative examination while
> awaiting receipt of medical source evidence.

20 C.F.R. § 404.1512(e).  The ALJ ordered a consultative examination, which Dr. Miljana Mandich

performed on March 16, 2011.  (Tr. 43-44, 529-35). Whether to order a consultative examination

is within the ALJ's discretion.  *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing

*Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam)). The ALJ complied with the

relevant legal authorities by ordering a consultative examination to determine the scope of plaintiff's

limitations and her ability to perform work-related functions. The ALJ did not err by not

re-contacting plaintiff's medical sources.

Plaintiff also contends that the ALJ committed reversible error by questioning the diagnosis

of fibromyalgia based on the ALJ's own assessment of the evidence.   Even if accurate, however,

this is harmless error because the ALJ included plaintiff's complaints related to her fibromyalgia

when making her RFC assessment and step-four determination. The Fifth Circuit has held that "procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). Plaintiff does not and can not demonstrate that the ALJ's statements affected her disability claim, substantially or otherwise. There is no reversible error here.

Plaintiff further maintains that the ALJ used her own lay opinion of the medical diagnosis and "played doctor." To the contrary, the ALJ supported her RFC determination by relying on the consultative examination by Mandich, who recorded that plaintiff had full and painless range of motion of the hips, full range of motion in her knees, and mild limitation of motion in her cervical and lumbar spine. (Adm. Rec. at 43, 529-35). State agency medical consultant LeBlanc also relied on Mandich's examination when rendering her exertional, postural, and manipulative RFC determinations. (*Id.* at 85-90). "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i), SSR 96-6p. The ALJ accepted LeBlanc's conclusions as valid, (*id.* at 50), and incorporated them into her RFC assessment. (*Id.* at 46). Thus, the ALJ did not play doctor but relied on expert medical opinions when assessing plaintiff's impairment, including her fibromyalgia and associated impairments.

Lastly, plaintiff fails to provide any objective medical evidence to demonstrate that her fibromyalgia caused any limitations more serious than those included in the ALJ's RFC assessment. She merely points to evidence not in the record that lists symptoms associated with fibromyalgia.

As stated above, the ALJ considered plaintiff's complaint of fatigue (exhaustion).  (*Id.* at 47). The ALJ also found that plaintiff has the severe impairments of arthropathies and osteoarthritis, (*id.* at 41), which the ALJ accounted for in her RFC assessment. (*Id.* at 46). The Court thus finds that substantial evidence supports the ALJ's assessment and conclusions on plaintiff's fibromyalgia. This claim of error fails.

> ### 2.      Whether substantial evidence supports the ALJ's RFC.

In her second assignment of error, plaintiff argues that substantial evidence does not support the ALJ's RFC assessment.  She first repeats her argument (outlined above) that the ALJ failed to properly account for her symptoms resulting from her fibromyalgia.  As she failed to do in her first assignment of error, she does not state what limitations the ALJ should have included, nor does she point to any objective medical evidence to demonstrate that her fibromyalgia caused limitations more severe than those included in the ALJ's RFC assessment. Plaintiff must state the reasons for which she deserves the requested relief "with citation to the authorities, statutes and parts of the record relied on" or else she fails to properly raise the issue.  *Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990).  The Court finds that plaintiff has waived this argument here.

Plaintiff mainly argues that the ALJ's RFC assessment is deficient because it does not adequately account for her visual impairment. The regulations do not require the ALJ to restate a treating physician's diagnosis in the RFC assessment.  Rather "[y]our residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record." 20 C.F.R. § 404.1545(a)(1). "A person's 'residual functional capacity' is determined by combining a medical assessment of an applicant's

impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. *Villa v. Sullivan*, 895 F.2d 1019, 1023-1024 (5th Cir. 1990); 20 C.F.R. § 404.1546.

Plaintiff was represented by counsel at the oral hearing before the ALJ. (Adm. Rec. at 56). During his opening statement, plaintiff's attorney explained to the ALJ that plaintiff had peripheral vision loss, stating that Exhibit 7F diagnosed plaintiff with a complete peripheral vision loss. (*Id.* at 59). Plaintiff's attorney then stated that Dr. Mary T. Rieger's assessment was "not exactly accurate" and that plaintiff "has peripheral vision loss off to the, to the right side." (*Id.*). In her hypothetical question to the VE, the ALJ included the limitation of "just a reduced peripheral vision" affecting one eye. (*Id.* at 74). Thus, the ALJ included the very limitation plaintiff's attorney stated at the hearing, and the VE testified that plaintiff can still perform sedentary work, including her past relevant work as a billing clerk and customer service representative, with this limitation. (*Id.*).

Moreover, at the hearing, counsel for plaintiff did not disagree with this hypothetical question or ask the VE any hypothetical question that included a restriction to "complete peripheral visual field loss in both eyes." (*Id.* at 75). Plaintiff now argues, however, that the ALJ should have included this limitation in the RFC assessment and in the hypothetical question posed to the VE. The Fifth Circuit has created a two-part test for determining whether an ALJ's hypothetical question constitutes reversible error: (1) The question must include all disabilities of the claimant recognized by the ALJ; and (2) The claimant or his representative should be allowed to correct deficiencies in the ALJ's question. *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994). A defective

hypothetical question will not result in reversible error when the claimant's counsel "is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Id.* at 436. Moreover, "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Crey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).  Plaintiff makes just such an argument here, and the Court rejects it.

The Court recognizes that generally, the ALJ shall give more weight to the opinion of a treating specialist than to a physician who is not a specialist. 20 C.F.R. § 404.1527(c)(5).  Plaintiff contends that the ALJ should have only relied on the findings of Rieger, an optometrist – and thus a specialist – rather than on any findings by Dr. Vittal V. Chapa, who specializes in internal medicine.  However, on September 17, 2007, Rieger examined plaintiff and opined that plaintiff had "complete peripheral visual fiel[d] loss in both eyes secondary to stroke." (*Id.* at 415).  Yet plaintiff continued to work with this impairment for two more years, until she was laid off in September 2009. (*Id.* at 137, 158, 170, 182).  The ability to work despite a pre-existing condition supports the ALJ's finding that the claimant is not disabled. *See Fraga v. Bowen*, 810 F.2d 1296, 1305 & n.11 (5th Cir. 1987); *see also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) ("First, the record reflects that Vaughan was able to, and did, work for several years while suffering from ailments she

now asserts are disabling."). Additionally, although Rieger stated that plaintiff's visual impairment would prevent her from driving, she continues to drive. (Adm. Rec. at 65). Thus, plaintiff can not demonstrate that this impairment caused limitations that affected her ability to work or perform basic activities of daily living.

Moreover, even if plaintiff had a complete peripheral field loss in both eyes, she can still perform the billing clerk and customer service job, as these jobs are generally performed. Both jobs describe the following visual requirement to perform the occupation:

> Near Acuity – Frequently – Exists from 1/3 to 2/3 of the time
> Far Acuity – Not Present – Activity or condition does not exist
> Depth Perception – Not Present – Activity or condition does not exist
> Field of Vision – Not Present – Activity or condition does not exist

*See* DOT 214.362-042; DOT 205.362-026.  Thus, the fact that the ALJ did not include Rieger's exact diagnosis in the RFC and hypothetical question is harmless due to the fact that both jobs do not require work-related functions that conflict with Rieger's diagnosis. Thus, even if the ALJ did commit error, any such error was harmless. *See Mays*, 837 F.2d at 1364; *Morris*, 864 F.2d at 335. Substantial evidence supports the ALJ's RFC assessment here, and plaintiff fails to convince the Court that she erred.

## VI.  CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's case be DISMISSED WITH PREJUDICE.

14

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 27th day of March, 2014.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

15